UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| UNITED STATES OF AMERICA | ) ) ) |
| v. | ) Case No. 1:16-CR-00106-JAW ) |
| STEVEN NYGREN | ) ) ) |

## PROSECUTION VERSION OF THE OFFENSE

### Bank Fraud

Brooklin Boat Yard, Inc. ("BBY") is a closely held corporation organized under the laws of Maine. In 2013, defendant Steven Nygren commenced work as a consultant for BBY at its office in Brooklin, Maine. In the summer of 2014, Nygren was hired as the company's financial manager. Nygren's duties as financial manager included maintenance of accurate financial records and controls, as well as reporting the company's financial status to ownership.

Beginning in June, 2014, Nygren drafted a series of unauthorized checks drawn on BBY's operating account at Camden National Bank. Each check on this business account required signature by two of three authorized BBY employees. Individual 1 and Individual 2 were each authorized to sign these checks. At no time was the defendant so authorized. Over the course of the following 15 months, Nygren drafted 63 such checks, forging Individual 1's and Individual 2's signatures on each check, and making each check payable to "Continuum," the name of Nygren's business consulting enterprise. These checks totaled more than $732,000.

Nygren then deposited these checks, or caused them to be deposited, in a Massachusetts bank account held in the name of Individual 3 "d/b/a Continuum." Individual 3 is Nygren's relative and resides in eastern Massachusetts. Individual 3 opened bank accounts for Nygren's

use at his request, including the account into which the 63 checks were deposited. Also at Nygren's direction, Individual 3 assisted Nygren by: depositing checks; withdrawing funds; signing checks drawn on the Massachusetts account; giving Nygren a debit card associated with the account; and providing Nygren with a stamp of Individual 3's signature so Nygren could draft checks on the Massachusetts account himself.

Additional banking records confirm that nearly all of the embezzled funds went to Nygren's personal use. Nygren used nearly half the money from the bank fraud to fund his purchase and operation of the Brooklin General Store. He again used Individual 3's name to set up a Maine Limited Liability Company (LLC), and directed Individual 3 to open additional checking accounts to operate the business. Individual 3 remained in Massachusetts as Nygren conducted the day to day operations of the store. Nygren also used Individual 3's email account to communicate with the owners of the building the store operated in, with whom Nygren had negotiated a lease-to-own arrangement. Other payments from the Eastern Bank account containing the embezzled funds went to Nygren's immediate family members and to his personal expenses.

Nygren undertook these acts willfully and with the intent of defrauding BBY and Camden National Bank, a financial institution insured by the Federal Deposit Insurance Corporation. Nygren's willful intent was confirmed by his own admissions to BBY ownership. About three days after Individual 1, the owner of BBY, discovered the embezzlement, he met with Nygren at Individual 1's residence. The meeting was monitored and recorded by Sgt. Jason Sattler of the Maine State Police. In that conversation, Nygren acknowledged using half the money to buy the Brooklin General Store, and acknowledged spending the other half on personal expenses, including $70,000 for his daughter's wedding. When Individual 1 stated that Nygren

had done a poor job of forging Individual 1's and Individual 2's signatures, Nygren replied "I didn't practice."

The above described conduct thus violated Title 18, United States Code, Section 1344(2).

### Use of Unauthorized Access Device

After Nygren's check forgery came to light, BBY conducted an internal audit that discovered significant fraudulent use of corporate credit cards, totaling over $62,000. From about January 24, 2015 to about September 9, 2015, Nygren, without authorization and with the intent to defraud, used two credit card numbers for BBY accounts at Capital One Bank and Camden National Bank. Nygren used the credit cards to transfer funds to the Brooklin General Store, which he operated, and to purchase sports tickets over the internet. Each of these transactions affected interstate commerce through the use of interstate wire transmissions and interstate banking.

On about April 4 and about April 16, 2015, Nygren added these credit card numbers to his personal PayPal account. Nygren then used these credit card numbers to make PayPal purchases over the internet. Nygren was not authorized to use these credit cards, and he employed them with the knowing and willful intent to defraud BBY, Capital One, and Camden National Bank. In the course of Nygren's scheme, several payments, nearly all in excess of $1,000 each, were made to purchase sporting event tickets, as well as to transfer funds to Nygren's wife and another individual with whom Nygren conducted personal business.

In executing the scheme through PayPal, Nygren entered the credit card numbers into his PayPal account profile, causing the number to be electronically transmitted over the internet to PayPal servers outside the State of Maine. After wrongfully acquiring the credit card numbers in Maine, Nygren also accessed his PayPal account from Massachusetts for the purpose of using

those credit card accounts to make additional purchase and payments. Each time Nygren used the credit card numbers through his PayPal account, he used the internet to send electronic signals through interstate wires, and in turn caused the interstate transfer of funds and goods. This conduct thus violated Title 18, United States Code, Section 1029(a)(2)

### **Evasion of Tax Payment**

Nygren has been in collection with the IRS from at least 2005, and was well aware of the outstanding taxes, penalties, and interest he owed to the United States for both 2005 and 2006 employment tax and for personal income tax for 1996, 1997, 2005, 2006, 2007, 2008, and 2009. From 2005 to 2013, Nygren had regular contact with the IRS, both personally and through his designated representatives. At all times, Nygren knew that he continued to owe the money to the government. To defeat the IRS's ability to collect the outstanding tax debt, Nygren willfully and purposefully engaged in a course of conduct designed to disguise his income and his control of assets. Specifically, beginning in 2010 in the District of Maine and elsewhere, Nygren:

- Worked as an employee of an Augusta, Maine business under a false social security number;
- Worked a subcontractor for the same Augusta, Maine business under the same false social security number;
- Directed said Augusta, Maine employer to wire his compensation into accounts under his wife's name;
- Failed to timely file his federal income tax returns for 2011, 2012 and 2013 even though he had sufficient income to require the filing of said returns;
- Directed his employer Brooklin Boat Yard, to treat him as an independent contractor when he was hired the boatyard's CFO;

- Requested his compensation for consulting work and employment at Brooklin Boat Yard made payable to a defunct Massachusetts LLC;

- Directed Individual 3 to open an account in Individual 3's name, "d/b/a" the name of the defunct LLC;

- Transported the payment from Brooklin Boat Yard to Massachusetts for the purpose of depositing or causing the payment to be deposited into an account under Individual 3's name;

- Used the checks from this account and a signature stamp of Individual 3's name to purchase and operate the Brooklin General Store in Brooklin, Maine;

- Operated the Brooklin General Store under an LLC set up in in Individual 3's name, using bank accounts in Maine also set up under this same relative's name; and

- Used these accounts and checks in Individual 3's name to direct funds from the store to his personal expenses and debts.

This conduct thus violated Title 26, United States Code, Section 7201

Had this case proceeded to trial, the government would have produced copies of the checks forged by the defendant and bank records showing the defendant's disposition and use of the transferred funds; credit card and PayPal records showing the defendant's unauthorized use of the credit cards; witness testimony concerning the defendant's duties and authorizations at BBY and the forgery of Individual 1 and individual 2's signatures; the defendant's recorded statements to Individual 1; and testimony about the defendant's instructions to Individual 3 and the actions Individual 3 took on the defendant's behalf. The government would have also produced documentation and testimony demonstrating the tax debt the defendant owed to the government and communications the defendant had with the IRS concerning this debt, as well

and documentation and testimony showing the defendant's use of a false social security number, and the use of bank accounts in relatives' names to receive payment and to subsequently spend the funds received.

Dated: __June 16, 2017_____          RICHARD W. MURPHY
                                                ACTING UNITED STATES ATTORNEY

                                                /s/Chris Ruge
                                                Chris Ruge
                                                Assistant United States Attorney
                                                U.S. Attorney's Office
                                                202 Harlow Street, Room 111
                                                Bangor, ME  04401
                                                (207) 945-0373
                                                chris.ruge@usdoj.gov

UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

**CERTIFICATE OF SERVICE**

       I hereby certify that on June 16, 2017, I electronically filed the document(s) with the Clerk of Court using the CM/ECF system which will send notification of such filing(s) to the following:

Roger F. Brunelle, Jr. Esq.

                                    Richard W. Murphy
                                    Acting United States Attorney

                                    /s/ Chris Ruge
                                    Assistant United States Attorney
                                    United States Attorney's Office
                                    202 Harlow Street, Suite 111
                                    Bangor, ME 04401
                                    (207) 945-0373
                                    Chris.ruge@usdoj.gov