UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | Crim. No. 1:16-cr-00106-JAW |
| | ) | |
| STEVEN NYGREN | ) | |

**GOVERNMENT'S RESPONSE TO DEFENDANT'S
MOTION FOR A VARIANT SENTENCE**

NOW COMES the United States, by and through its attorneys, Halsey B. Frank, United States Attorney for the District of Maine, and Chris Ruge, Assistant United States Attorney, and submits this response in opposition to the defense motion for a variant sentence ( ECF No. 58) to assist the Court in its determination of an appropriate sentence.

**I.    Introduction**

The defendant has filed a separate motion for a variant sentence seeking a downward departure on several bases. The government opposes the motion and responds as follows.

**a. Alleged Chemical Dependency**

The defendant requests a downward departure based on his alleged long-standing abuse of marijuana and alcohol. The defendant does not contest Paragraph 74 of the PSR, stating that the defendant has used alcohol and marijuana daily, and began use in 1981. ECF No. 58, pp. 3, 6. But, while suggesting that his use of marijuana and alcohol have "impeded his ability to make the right decisions in his life," he still touts his accomplishments in this same time frame, pointing out that he ran a successful firm bringing management consulting services to small businesses throughout New England. ECF No. 58, p. 14. This is hardly the picture of a drug-addled junky thinking only of his next fix. Rather, Mr. Nygren by all appearances was a

businessman who simply enjoyed excess. He drove a Mercedes. G.E. 37. He owns his home. PSR, ¶ 82. He made payments to a private high school, presumably for his school-aged daughter. He provided an expensive wedding for his other daughter. G.E. 16. He was a member of a social club in his hometown. G.E. 48. He was able to maintain employment, at least until he was caught stealing from his employers. G.E. 14, 35, 24. There is little indication from any of these facts, or from any evidence presented by the defense, that alcohol or marijuana use had any impact on the defendant's criminal conduct, or that his new-found sobriety will do anything to lessen his chances of recidivism.

More plausibly, Nygren's excesses, including his daily recreational use of intoxicants, were simply manifestations of his penchant for self-indulgence, and were facilitated by—rather than the cause of—his lengthy course of criminal conduct. PSR, ¶ 23. Nygren has asserted that he now abstains from both alcohol and marijuana, obviating the need for treatment outside of the prison environment. While Nygren implies that this change in lifestyle is somehow related to a change in outlook after his stroke, the Court might also consider that the lack of disposable income and the inability to afford quarters away from his family might also play some role.

Given the lack of nexus between his criminal conduct and intoxicant use, and the lack of use at this point, there appears no reason to vary the defendant's sentence on this basis.

### b. Alleged gambling addiction

The defendant next argues that he should receive a variance under § 5K2.13 in light of his professed gambling addiction.

U.S.S.G. § 5K2.13 states that a downward departure may be warranted if "(1) the defendant committed the offense while suffering from a significantly reduced mental capacity;

2

and that significantly reduced mental capacity contributed <u>substantially</u> to the commission of the offense." United States Sentencing Guidelines Manual (Nov. 2016) (emphasis added).

Some courts have held that the § 5K2.13 permits a departure where a mental condition provides a motive to commit the crime, rather than causing the criminal conduct itself. <u>See</u>, <u>e.g.</u>, <u>United States v. Sadolsky</u>, 234 F.3d 938 (6th Cir. 2000). Others have taken a stricter approach, and required a causal connection between the mental condition and the crime of conviction. <u>See</u> <u>United States v. Carucci</u>, 33 F.Supp.2d 302, 303 (S.D.N.Y. 1999). <u>See</u> <u>also</u> <u>United States v. Prescott</u>, 920 F.2d 139, 146 (2d Cir. 1990) (identifying a two element test for § 5K2.13 downward departure as "reduced mental capacity and a causal link between that reduced capacity and the commission of the charged offense.").

An intermediate approach was adopted in <u>United States v. Roach</u>, 296 F.3d 565 (7th Cir. 2002). There, the court looked not to causation of the offense or motive in the abstract, but to how the mental defect affected the defendant's conduct at the time of the offense. This approach was adopted in <u>United States v. Kim</u>, where the defendant committed bank fraud (by forging her employer's checks) 54 times over three years to alleviate her significant credit card debt. 313 F.Supp. 2d 295, 299 (S.D.N.Y. 2004). In that case, factually similar to the case at hand, the district court denied the downward departure, observing:

> the fact that she had a strong reason to commit bank fraud places Kim, at best, in no different position from that of ordinary defendants who commit crimes in an attempt to extricate themselves from difficult financial circumstances in which they find themselves through no fault of their own.

Id. (internal quotations omitted). The court also noted that "committing bank fraud – constitutes a separate act which is at least one step removed" from the allegedly compulsive behavior. Id. <u>See</u> <u>also</u> <u>United States v. Grillo</u>, 2003 WL 22999219 at *2, No. 03 CRIM 0249 (S.D.N.Y., Dec. 22, 2003).

3

Nonetheless, even in cases where the defect is not sufficiently proven under § 5K2.13, the history and characteristics of the defendant can still be taken into account under 18 U.S.C. § 3553(a)(1). United States v. Rosenberg, 635 F.Supp 2d 306, 312 (S.D.N.Y. 2009).

The defendant is correct that Sadolsky has perhaps the most helpful language for his cause. Even so, his reliance on Sadolsky suffers two defects. First, Sadolsky specifically construes the 1998 amendments to the Guideline, and does not take into account the 2003 amendment that include the clearer language regarding causation. 234 F.3d at 941. Second, Sadolsky did not negate the need for a causal link, but instead expanded it to include a mental condition that led to the motive to commit the criminal act. Even under the broader standard adopted by the Sixth Circuit, the defendant must at least show some link between the disorder and the motive. Sadolsky, for example, stole some $39,000, when he was in debt to bookies for over $30,000. The sums involved made the motive for stealing much more plausibly related to the theft charged that the facts in this case, where Mr. Nygren stole over $800,000 and provides no basis to conclude he spent even ten percent of that on gambling.

Here, perhaps to fit under Sadolsky's umbrella, the defendant makes some bold, yet nebulous, claims concerning his motive. He claims that "much" of the money he stole went to gambling debts. ECF No. 58, p. 9. What the defendant means by "much" is unclear, but if he means "most," this is a shocking claim indeed. First, that claim would be hard to square with his admissions that he spent half the money stolen from BBY on the Brooklin Store, and that "he thought he would generate enough profit from Brooklin General to repay the money." PSR, ¶ 23. In addition, he continued to support his home and family in Massachusetts, while also maintaining an apartment in Brooklin. He also spent considerable sums on living expenses, his

daughter's wedding, and tickets to sporting events. All this is to say that Nygren was using the money for a great many purposes, and the facts do not indicate his primary motivation was due to his gambling debts. Second, if it is true he spent most on the money on his gambling debts and obtained no personal gain, then the money that ostensibly went to the store, to his wife, and to his children was part of an elaborate and as of yet an uncharged money laundering scheme. The government submits that the first option is the most plausible in light of the known evidence, and that the defendant's gambling was just another facet of his unsupportable lifestyle, along with the sporting events, profligate dining habits, and copious marijuana use.

United States v. Vieke is similarly distinguishable. 348 F.3d 811 (9th Cir. 2003). There, the court granted a departure not on mental defect, but because the defendant's criminal acts were deemed aberrant behavior. 348 F.3d at 812. Based on the record in this case, including from the defendant's admissions and the statements of his wife, it is apparent that neither gambling nor bank fraud are aberrant behavior for Mr. Nygren. In fact, the defendant cited his gambling as a significant personal expense in court cases going back some 20 years. PSR, ¶ 80; American Management Services, Inc., v. Nygren, 10 Mass. L. Reptr 494. (1999). As set forth more fully in the government's sentencing memorandum, the defendant's acts of bank fraud—including the 15-month course of conduct charged in the Indictment—are also not anomalies in his life.

The government respectfully suggests that Judge Kaplan's analysis in United States v. Grillo best addresses the issues raised. In Grillo, the defendant, convicted of theft of mail and access device fraud, requested a § 5K2.13 departure based on his gambling addiction. After reviewing the case law, Judge Kaplan declined to grant the departure, noting:

> All crimes are committed out of motives. Many are committed out of motives created by behavior that might be described as compulsive. The Court is

5

> unpersuaded that the defendant's situation is outside the heartland occupied by those who commit like crimes.

2003 WL 22999219 at *2. The same analysis applies to Mr. Nygren.

The defendant provides no connection between his alleged gambling addiction and his tax fraud conviction.

### c. Medical condition

The defendant requests a lighter sentence based on his medical condition. The Guidelines do provide for a downward departure where the defendant's "physical condition or appearance" individually or combined with other characteristics, "is present to an unusual degree and distinguishes the case from the typical cases covered by the guidelines." U.S.S.G § 5H1.4. A similar provision is made for a defendant's mental or emotional conditions. U.S.S.G § 5H1.3. The facts of this case, however, particularly when compared to the case law presented by the defense, do not demonstrate any such unusual or distinctive conditions. See, e.g., United States v. Ramos-Gonzalez, 775 F.3d 483, 503 (1st Cir. 2015) (defendant's heart condition, which could allow him to live for years or die suddenly at any time, was properly disregarded by the sentencing court).

The defendant has made a substantial physical recovery, by some reports returning to 99 percent of his pre-stroke physical function. PSR, ¶ 66. The Court has seen and heard the defendant. Dr. Kissin stated that Nygren adapted quickly to the prison environment while under observation this spring. ECF No. 39. In short, there is ample evidence that the defendant is physically ready and able to go to prison. Moreover, unlike the defendants in the cases cited by the defense, Nygren has committed a significant crime over a sustained period, and there is significant evidence that this was not an isolated incident. The public should be protected from Mr. Nygren, and it will be while he is in prison.

**d. Recidivism**

The defendant cites a study purporting to show that there was no difference in recidivist rates between white-collar defendants sentenced to probation and those sentenced to imprisonment. ECF No. 58, p. 12. Even if this is the case, the conclusion hardly inures to Nygren's benefit, as the evidence indicates that Mr. Nygren has already proven himself to be a recidivist. If he is not apt to be influenced by specific deterrence, he should be incarcerated to protect the public. Moreover, the defendant argues that his crimes are related to compulsive behavior, which also increases the likelihood of recidivism.

The defendant makes a similar argument concerning recidivist rates for defendants over 40. Given the evidence of Nygren's conduct throughout his 40's, Mr. Nygren has himself painted a dim picture of rehabilitative potential and likeliness to offend in the future.

**e. Background and character.**

The defendant argues he has a contribution to make in society given his past business success. ECF No. 58, p. 14. In support of this assertion, he has provided several letters from businesses who employed his services in the late 1990's and early 2000's. The government has two observations of these letters as a whole. First, Mr. Nygren was apparently doing a brisk business as a consultant even as he was failing to pay taxes to the IRS, taxes that are now the object of Count 65. Second, almost all of the letters to Mr. Nygren thank him for the efforts of his employees, and none indicates that Mr. Nygren himself was himself a consultant spending significant time at the businesses—meaning that for each of those happy customers, Steve Nygren was a safe distance away from the company checkbook.

The defendant also submits several letters from family members.  These letters, taken together, paint a picture that is sadly consistent with the defendant's other known conduct during the time of his offenses.  His post-stroke and post-conviction change in lifestyle can as easily be explained by limited options as by some new-found introspection and commitment to personal responsibity.

**II  Conclusion:**

The defendant is not distinguishable from similar criminals in any positive or mitigating way.  Moreover, his allegedly habitual indulgence in intoxicants and gambling provides no extenuating circumstance vis-à-vis his crimes of conviction.  The defendant's motion for a variant sentence should therefore be denied.

Dated: December 5, 2017

Respectfully submitted,

HALSEY B. FRANK
UNITED STATES ATTORNEY


/s/Chris Ruge
Assistant United States Attorney
U.S. Attorney's Office
202 Harlow Street, Room 111
Bangor, ME  04401
(207) 945-0373
chris.ruge@usdoj.gov

UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

## CERTIFICATE OF SERVICE

I hereby certify that on December 5, 2017, I electronically filed the GOVERNMENT'S RESPONSE TO DEFENDANT'S MOTION FOR A VARIANT SENTENCE with the Clerk of Court using the CM/ECF system which will send notification of such filing(s) to the following:

Roger F. Brunelle, Jr., Esq.

HALSEY B. FRANK
United States Attorney

/s/ Chris Ruge, Esq.
Assistant United States Attorney
United States Attorney's Office
202 Harlow Street, Suite 111
Bangor, ME 04401
(207) 945-0373
chris.ruge@usdoj.gov