UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | No. 1:16-cr-00106-JAW |
| | ) | |
| STEVEN NYGREN | ) | |

**ORDER ON SECOND MOTION FOR COMPASSIONATE RELEASE**

Nine months ago, the Court denied an inmate's motion for compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A). The inmate again moves for compassionate release, claiming changed circumstances warrant his early release. The Court concludes that the inmate has failed to carry his burden of proving extraordinary and compelling reasons warranting release, and the seriousness of his offense, the relatively short time he has served, and the need for the sentence served to fulfill the sentence imposed continue to preclude his release. The Court dismisses the motion without prejudice.

## I. PROCEDURAL BACKGROUND[1]

On May 25, 2018, the Court sentenced Steven Nygren to ninety-five months of imprisonment concurrent with two sixty-month terms, five years of supervised release concurrent with two three-year terms, no fine, $815,496.27 restitution, and a $6,500 special assessment for bank fraud in violation of 18 U.S.C. § 1344(2), access

---

[1]    In this order, the Court provides only the relevant procedural background. An exhaustive account of the factual background, including Mr. Nygren's history and characteristics, his criminal history, and the offense conduct, can be found in the Court's July 22, 2020 order denying Mr. Nygren's first motion for compassionate release. *See Order on Mot. for Compassionate Release* at 12-20 (ECF No. 111).

device fraud in violation of 18 U.S.C. § 1029(a)(2), and tax evasion in violation of 26 U.S.C. § 7201. *Min. Entry* (ECF No. 71); *J.* (ECF No. 74). On June 8, 2018, Mr. Nygren filed a notice of appeal. *Def.'s Notice of Appeal* (ECF No. 76). On August 6, 2019, the United States Court of Appeals for the First Circuit affirmed this Court's sentence. *J.* (ECF No. 91); *United States v. Nygren*, 933 F.3d 76 (1st Cir. 2019). The Court received the mandate of the First Circuit on August 27, 2019. *Mandate* (ECF No. 92). On December 9, 2019, The United States Supreme Court denied Mr. Nygren's petition for writ of certiorari. *Nygren v. United States*, 140 S. Ct. 606 (2019).

On May 22, 2020, Mr. Nygren filed a motion for compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A)(i). *Emergency Mot. for Modification of Sentence Pursuant to 18 U.S.C. § 3582(c)(1)(A) in Light of Imminent Threat of Contracting COVID-19 Virus* (ECF No. 95) (*Def.'s First Mot.*). On July 22, 2020, the Court denied Mr. Nygren's motion, concluding that despite his serious medical conditions, "the likelihood that he will reoffend, along with the short amount of time he has served in relation to the total length of his sentence, caution against release." *Order on Mot. for Compassionate Release* at 1 (ECF No. 111) (*Order Denying Def.'s First Mot.*).

On August 5, 2020, Mr. Nygren appealed the Court's denial of his motion for compassionate release to the First Circuit. *Notice of Appeal of Decision on Mot. for Compassionate Release* (ECF No. 112). On August 26, 2020, Mr. Nygren moved pro se for this Court to reconsider its denial, *Mot. for Reconsideration* (ECF No. 119), which the Court dismissed because the First Circuit's docket reflected that

Mr. Nygren had already docketed his motion for reconsideration with the First Circuit. *Order Dismissing Mot. for Reconsideration* (ECF No. 123). On December 22, 2020, the First Circuit dismissed Mr. Nygren's appeal because he filed an unopposed motion to voluntarily dismiss the appeal, *J.* (ECF No. 134), and returned the mandate to this Court. *Mandate* (ECF No. 135).

On December 24, 2020, Mr. Nygren, through Attorney William Maddox, filed a second motion for compassionate release. *Pet'r Steven Nygren's Subsequent Emergency Mot. for Compassionate Release and Mot. for Modification of Sentence Pursuant to 18 U.S.C. § 3582(c)(1)(A)* (ECF No. 137) (*Def.'s Represented Mot.*). On January 4, 2021, the Court docketed a pro se motion for compassionate release filed by Mr. Nygren. *Emergency Mot. for Modification of Sentence/Compassionate Release Pursuant to 18 U.S.C. § 3582(c)(1)(A) in Light of the Im[m]inent Threat of Contracting the COVID-19 Virus and Potential of Death at Higher than Normal Chance Due to Pre-Existing Health Conditions of the Pet'r* (ECF No. 145) (*Def.'s Pro Se Mot.*). Four days later, Attorney Maddox moved to withdraw, citing "irreconcilable differences," *Mot. to Withdraw as Counsel* (ECF No. 147), which the Court granted. *Order Granting William Maddox's Mot. to Withdraw as Att'y* (ECF No. 148). On January 14, 2021, the Government responded in opposition to both Mr. Nygren's represented and pro se motions for compassionate release. *Gov't Resp. to Second Mot. for Compassionate Release* (ECF No. 149) (*Gov't's Opp'n*). Mr. Nygren replied pro se to the Government's response on January 29, 2021. *Def.'s Resp. to the Gov't Resp. to Second Mot. for Compassionate Release* (ECF No. 150) (*Def.'s Reply*).

3

On April 8, 2021, the Court ordered Mr. Nygren to answer six questions regarding his vaccination status: "(1) has a vaccination been offered to Mr. Nygren, (2) did he accept the vaccination, (3) when was he vaccinated, (4) has he received one or two vaccinations, (5) if he is fully vaccinated, when did he become fully vaccinated, and (6) if he refused the vaccination, why." *Order* (ECF No. 158). On April 23, 2021, the Government informed the Court that Mr. Nygren received the Moderna vaccine on April 12, 2021 with the second shot to be administered in the coming weeks. *Gov't's Resp. to Court Order Directing Update of Vaccination Status* (ECF No. 159) (*Gov't's Resp. to Vaccine Status Order*). That same day, the Court docketed Mr. Nygren's response, in which he states he "reluctantly" accepted the vaccine on April 12, 2021 but explains that he continues to ask for compassionate release "due to the COVID-19 and risks involved of potential death by remaining incarcerated." *Resp. to the Order by the Honorable Judge Woodcock re: Second Mot. for Compassionate Release* at 8 (ECF No. 160) (*Def.'s Resp. to Vaccine Status Order*).

## II. THE PARTIES' POSITIONS

### A. Steven Nygren's Motions for Compassionate Release

There are currently two motions for compassionate release pending before the Court—one filed by Mr. Nygren through counsel and another filed by Mr. Nygren acting pro se. Even though Mr. Nygren is now proceeding pro se, the Court will consider both motions.

#### 1. Steven Nygren's Represented Motion

In Mr. Nygren's motion filed through counsel, he moves the Court for compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A) "given his high risk

factors related to his age, medical condition, including a prior stroke, and weight." *Def.'s Represented Mot.* at 1. He states that his projected release date is March 8, 2025, meaning he has served about 38% of his incarcerative term. *Id.* Before making his compassionate release argument, he brings the Court's attention to a document entitled "Institutional Referral for CCC Placement," known colloquially as "Form 210," which states that Mr. Nygren "has a PATTERN score of Minimum"[2] and says "Unit Team is referring inmate Nygren for COVID-19 Early Home Confinement." *Id.* at 1-2 (citing *id.*, Attach. 1, *Institutional Referral for CCC Placement*). He next claims that because he was "denied a request for compassionate release by the Warden of FMC Devens," he satisfied the exhaustion requirement. *Id.* at 5.

Turning to the merits of his motion, Mr. Nygren argues that he has two medical conditions, "chronic kidney disease and severe obesity," that the Centers for Disease Control and Prevention (CDC) recognizes as increasing the risk of severe illness from COVID-19 for adults of any age. *Id.* at 7. He also points to two more conditions, "cerebrovascular disease and hypertension or high blood pressure," that place him at increased risk of severe illness. *Id.*

Next Mr. Nygren argues that he is not a danger to the community. *Id.* He contends that if released, he would "reside with his wife in the location and under the

---

[2] "PATTERN stands for Prisoner Assessment Tool Targeting Estimated Risk and Needs, which is a risk assessment process that rates a prisoner's likelihood of reoffending. The possible scores are low, medium, and high." *United States v. Potter*, No. 15-cr-100-JD, 2020 U.S. Dist. LEXIS 205124, at *4 (D.N.H. Nov. 3, 2020). An inmate's PATTERN score is assigned by the BOP. *United States v. Perkins*, 480 F. Supp. 3d 360, 368 n.14 (D.N.H. 2020).

circumstances with which are mentioned in the Form 210." *Id.* He claims he would submit himself to any additional conditions of supervised release. *Id.* Lastly, he cites the current COVID-19 infection statistics from FMC Devens. *Id.* at 8.

Mr. Nygren concludes by arguing that "his four risk factors, not three as listed in the order of July 22, 2020, as well as his PATTERN Score of Minimum, his Unit Team recommendation of early home confinement and his increased percentage of time served more than offset the reasons mentioned in the Court Order of July 22, 2020 denying release." *Id.*

### 2. Steven Nygren's Pro Se Motion

Mr. Nygren's pro se motion makes similar arguments to his represented motion. He claims that "[a] number of factors have changed and other new factors need to [be] brought into the light that once the Court is aware of these the 'balance' will shift." *Def.'s Pro Se Mot.* at 2. He first recounts the current COVID-19 situation at all BOP institutions and at FMC Devens. *Id.* at 2-3. He next addresses the "quantum of risk," noting that "[t]he Court has already established that 'Mr. Nygren would have some degree of lower risk of contracting COVID-19 than he would have if he remained at FMC Devens,'" and reiterates that he is at lower risk at home with his wife in Salem, Massachusetts than at FMC Devens. *Id.* at 4-6 (quoting *Order Denying Def.'s First Mot.*). He further asserts that his medical conditions "now includes atrial fibrillation and is caused by cardiovascular disease" and claims that "[t]he Court previously fell short of calling that risk what it is; a situation with a high potential of contracting COVID-19 being fatal for Mr. Nygren." *Id.* at 5-6.

Mr. Nygren next addresses recidivism. He admits that his "behavior is inexcusable and inexplicable" and "[a]ny attempt to try will only sound like excuses for which there are none." *Id.* at 7. However, he confines his behavior to 2012-2015 and claims that "[n]o one lasts in the same service business for twenty four years if they make a habit of 'perpetrating financial fraud against trusting souls.'" *Id.* at 7. He says that "perpetrating financial crimes is not part of" his future plans and the "only priorities in [his] life are continuing to build a personal relationship with Jesus Christ by finding a strong Bible based church and repaying his debts, plus interest." *Id.* at 8.

Mr. Nygren further argues that his low PATTERN score "is based largely on his behavior and performance in the 30 months he has spent at Devens" and argues that it should "carry considerable weight by the court in their compassionate release determination." *Id.* at 10. He also states that he "has been in the service dog training program for 28 months" and was "chosen and participated in the FMC outreach program and has spoken at 4 different MA colleges for youth mentoring." *Id.*

Mr. Nygren concludes by contending that he "suffers from several high risk factors related to his age, medical condition and weight" and "has demonstrated flawless behavior since being incarcerated and is ranked a minimum risk of recidivating by the DOJ and BOP." *Id.* at 11. Therefore, he argues that he "qualifies for compassionate release and should be so released." *Id.*

## B.  The Government's Opposition

The Government responds in opposition to both of Mr. Nygren's motions.  The Government argues that "[b]ecause there has not been a substantial change of circumstances, and because the 3553(a) factors continue to weigh heavily against [Mr. Nygren's] early release, the government respectfully requests that the present motions be denied."  *Gov't's Opp'n* at 2.  The Government first recounts the background in this case and provides an exhaustive account of the BOP's response to the COVID-19 pandemic, arguing that all of the BOP's measures "are designed to mitigate sharply the risks of COVID-19 transmission in a BOP institution."  *Id.* at 8.  The Government states that "[u]nfortunately and inevitably, some inmates have become ill, and more likely will in the weeks ahead," but the BOP must weigh this against "other critical considerations."  *Id.*

The Government states that it is "not contesting the exhaustion of administrative remedies" and turns to the merits of the motion.  *Id.* at 11 n.7.  First, it "concedes that [Mr. Nygren] offers an 'extraordinary and compelling reason' warranting compassionate release because of his obesity, and kidney disease."  *Id.* at 12.  "While the government does not concede that hypertension and cerebrovascular disease independently establish such a reason," it admits that according to the CDC, "these *might* be risk factors" and the Court may take these conditions into consideration.  *Id.* (emphasis in original).  However, the Government contends that Mr. Nygren did not provide adequate documentation of atrial fibrillation, but even if he did so it "would not have a measurable effect on the analysis

of this case, given his uncontested diagnoses of severe or near-severe obesity and mild kidney disease." *Id.* at 12 n.9. The Government "does not concede that his ailments make it more likely that [he] will contract COVID-19 at FMC Devens, particularly while assigned to the camp." *Id.* at 13. In sum, the Government argues that Mr. Nygren "has not made any showing that . . . the severity of his current collection of ailments is substantially different than [it] was six months ago, [or] that it otherwise warrants a reassessment of . . . how those ailments balance against the 3553(a) factors in the current environment within the camp." *Id.*

The Government "incorporates and reasserts" its prior arguments regarding danger to the community and § 3553(a) factors, but makes a few additional observations. *Id.* at 14. It notes that Mr. Nygren "has a substantial history of defrauding others of money, frequently people with whom he has established a position of trust" and believes he "continued his fraudulent schemes and tax evasion throughout his sentencing process, and even after sentencing up to the time he self-reported to BOP." *Id.* The Government also points to the "egregious" nature and circumstances of the offenses and the need to deter future crimes by Mr. Nygren. *Id.* at 14-15. Regarding the PATTERN score, the Government argues that "[w]hile the PATTERN score serves purposes within the DOJ, it is not a substitute for this Court's analysis under the applicable law," and contends that "criminal history is a very small part of the PATTERN score analysis." *Id.* at 15. Finally, the Government argues the sentence is necessary to reflect the seriousness of the offense, promote respect for the law, and provide just punishment, and the Government distinguishes a case cited by

Mr. Nygren, *United States v. Lynch*, No. 1:19-cr-10319-PBS, *Order Granting Mot. for Reconsideration* (D. Mass. Jan. 5, 2021) (ECF No. 34). *Id.* at 15-16.

## C. Steven Nygren's Reply

In a forty-one page pro se reply, Mr. Nygren admits that "[t]he government is correct that [he] seeks a reassessment of the judgment this Court made six months ago" but argues the "factors are plentiful." *Def.'s Reply* at 2. He cites his atrial fibrillation, the increase in COVID-19 cases at FMC Devens, the BOP's mismanagement of the COVID-19 pandemic, and a number of cases where judges granted compassionate release. *Id.* at 2-10. "Needless to say," he claims, "there have been a very substantial change of circumstances in the past six months and because of that and the fact that there is <u>no</u> greater value than that of a human life [he] respectfully requests that this Honorable Court grant his motion for compassionate release." *Id.* at 10 (emphasis in original).

Mr. Nygren next provides the Court with further background. He asserts that he has served "just under 40% of his net sentence" and again points to the "Institutional Referral for CCC Placement" document for support, but states that his "transfer to home confinement was denied by BOP Central Office in Washington, D.C. for undisclosed reasons." *Id.* at 11-12. He claims "the response given thus far is that [he] hasn't performed 50% of his sentence," but he is seeking more information as to the denial. *Id.* at 12. He then criticizes the BOP's response to the COVID-19 pandemic and provides additional legal support where judges granted compassionate release. *Id.* at 15-25.

Turning to the merits, he argues that he is a "first time offender of a white collar crime" and states that if released, his "life would no longer be in the risk it is now" and he would "be able to secure employment and begin to right his wrongs." *Id.* at 27-28. He analyzes the cases at FMC Devens and asserts that, if released, his "chances of death due to COVID are at least almost 80% less than in prison." *Id.* at 29.

Regarding his "history and characteristics," he states that "[o]f the over 2000 clients there were <u>no issues</u> even closely resembling [his] admittedly horrible mistake of his final 15 months at Brooklin Boatyard" and argues that "to say that this inexcusable behavior is something that took place dozens of times and repeatedly over almost 25 years or that it will ever happen again because of it is not accurate." *Id.* at 31 (emphasis in original). He says that today he is a "completely different person." *Id.* at 32.

Finally, he argues for the relevance of his "minimum" PATTERN score, claiming the "DOJ spent an incredible amount of time and money developing the PATTERN score to be an effective tool that the BOP and all DOJ employees can use to measure the risk of recidivism of BOP inmates." *Id.* at 36. He "hopes the Honorable Court can see that he is willing to do whatever it takes to right his wrongs and get on with it." *Id.* at 38.

## III.  LEGAL STANDARD

Over the course of the COVID-19 pandemic, the Court addressed the legal standard for deciding a motion for compassionate release on several occasions. *See,*

*e.g.*, *United States v. Crosby*, 1:17-cr-00123-JAW-01, 2020 U.S. Dist. LEXIS 199085, at \*16-23 (D. Me. Oct. 27, 2020).  Put succinctly, 18 U.S.C. § 3582(c)(1)(A)(i) permits a court to modify a term of imprisonment when (1) "extraordinary and compelling reasons warrant" the movant's release, (2) release is consistent with "the factors set forth in [18 U.S.C. §] 3553(a)," and (3) release comports with "applicable policy statements issued by the Sentencing Commission . . .."  18 U.S.C. § 3582(c)(1)(A).[3]

The United States Sentencing Commission issued a policy statement under United States Sentencing Guideline § 1B1.13 for addressing compassionate release motions under § 3582(c)(1)(A).[4]  This policy statement requires that the movant must meet the "requirements of subdivision (2)," which provides that a court must determine that "the defendant is not a danger to the safety of any other person or to

[3]        Section 1B1.13 of the United States Sentencing Commission Guidelines addresses reductions in the terms of imprisonment under 18 U.S.C. § 3582(c)(1)(A).  But the Commission promulgated these provisions before Congress enacted the First Step Act.  *See United States v. Brooker*, 976 F.3d 228, 230-34 (2d Cir. 2020) (discussing the history of § 1B1.13 and the First Step Act).  As Judge Hornby of this District noted, the "Second, Fourth, Sixth and Seventh Circuits have . . . ruled that the Guideline policy statement applies only to motions brought by the Director of the Bureau of Prisons, not to motions for relief brought by defendants, and nothing limits judges' discretion in considering 'the full slate of extraordinary and compelling reasons that an imprisoned person might bring before them in motions for compassionate release.'"  *United States v. Almeida*, Nos. 2:17-cr-52-DBH-01, 2:11-cr-127-DBH-01, 2021 U.S. Dist. LEXIS 364, at \*4 (D. Me. Jan. 4, 2021) (quoting *Brooker*, 976 F.3d at 235-37 and citing *United States v. McCoy*, 981 F.3d 271, 281-83 (4th Cir. 2020); *United States v. Jones*, 980 F.3d 1098, 1108-11 (6th Cir. 2020); *United States v. Gunn*, 980 F.3d 1178, 1180 (7th Cir. 2020)); *see United States v. Gowdy*, 832 F. App'x 325, 327 (5th Cir. 2020) (describing whether § 1B1.13 applies to motions for compassionate release as an "open question"); *United States v. Pelloquin*, No. 20-12818-DD, 2020 U.S. App. LEXIS 39966, at \*4 (11th Cir. Dec. 21, 2020) (characterizing the issue as "not frivolous").

[4]        As the Court has previously discussed, "[t]he Sentencing Commission promulgated this policy statement before the emergence of the COVID-19 pandemic and before the changes to § 3582 put in place by the FIRST STEP Act; its provisions are therefore not directly related to the unique circumstances presented by a global pandemic.  Nevertheless, the Court finds the policy provisions are a useful starting point for its analysis of the compassionate release motion."  *Crosby*, 2020 U.S. Dist. LEXIS 199085, at \*20 n.1.  Similarly, Judge Hornby of this district has ruled that this policy statement "'provides helpful guidance' but 'is not ultimately conclusive given the statutory change.'"  *United States v. Rembert*, No. 2:12-CR-66-DBH, 2020 U.S. Dist. LEXIS 210841, at \*1 (D. Me. Nov. 11, 2020) (quoting *United States v. Fox*, No. 2:14-cr-03-DBH, 2019 U.S. Dist. LEXIS 115388, at \*5 (D. Me. July 11, 2019), *aff'd*, No. 19-1785 (1st Cir. July 23, 2020)).  The Court agrees.

the community, as provided in 18 U.S.C. § 3142(g)."  U.S. SENTENCING GUIDELINES MANUAL § 1B1.13 cmt. n.1 (U.S. SENTENCING COMM'N 2018) (U.S.S.G).   Section 3142(g) sets forth four factors that a court must consider before releasing a person pending trial.   They include: (1) the nature and circumstances of the offense, specifically whether the crime is a crime of violence or involves a controlled substance; (2) the weight of the evidence against the person; (3) the history and characteristics of the person; and (4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release.  18 U.S.C. § 3142(g).

The policy statement also provides criteria for determining whether "extraordinary and compelling reasons" exist to release the defendant.  U.S.S.G. § 1B1.13 cmt. n.1.  These reasons include certain enumerated terminal illnesses and similar conditions, physical, functional, mental, or cognitive impairments, age, family circumstances, and other unenumerated reasons.  *Id.* § 1B1.13 cmt. n.1 (A-D).  The policy statement further provides that "an extraordinary and compelling reason need not have been unforeseen at the time of sentencing in order to warrant a reduction in the term of imprisonment."  *Id.* § 1B1.13 cmt. n.2.  Finally, it states that "[p]ursuant to 28 U.S.C. § 994(t), rehabilitation of the defendant is not, by itself, an extraordinary and compelling reason for purposes of this policy statement."  *Id.* § 1B1.13 cmt. n.3.

The movant bears the burden of proving that he is entitled to a sentence reduction, and "the Court has broad discretion in deciding whether to grant or deny a motion for sentence reduction."  *United States v. Curtis*, No. 1:14-cr-00140-JAW,

2020 U.S. Dist. LEXIS 102045, at *12 (D. Me. June 11, 2020) (quoting *United States v. Britton*, 473 F. Supp. 3d 14, 16 (D.N.H. 2020) (internal citations omitted)).

## IV.  DISCUSSION[5]

The present motion is Mr. Nygren's second motion for compassionate release. The Court already denied Mr. Nygren's first motion for compassionate release after an exhaustive review of his history and characteristics, criminal history, and the nature and circumstances of his offenses. *Order Denying Def.'s First Mot.* at 12-20. Pursuant to 18 U.S.C. § 3582(c)(1)(A), the Court considered whether Mr. Nygren was a danger to the community,  whether the 18 U.S.C. § 3553(a) factors favored release, and whether his medical conditions, coupled with the COVID-19 pandemic, constituted "extraordinary and compelling reasons" warranting release. *Id.* at 20-34. After careful consideration, the Court concluded that while "Mr. Nygren's medical conditions and the inherent danger of being incarcerated in BOP facilities at this time present a serious case for compassionate release," the Court "is unable to release Mr. Nygren into the community because it fears that it would be just a matter of time before he perpetrated another financial fraud against another trusting soul." *Id.*

---

[5]     18 U.S.C. § 3582(c)(1)(A) contains a mandatory claim processing rule, which bars some compassionate release motions as untimely. *See Crosby*, 2020 U.S. Dist. LEXIS 199085, at *17 (citing *United States v. Lugo*, No. 2:19-cr-00056-JAW, 2020 U.S. Dist. LEXIS 63673, at *3 (D. Me. Apr. 10, 2020)).   This Court previously held that "[s]uccessive compassionate release motions must independently satisfy the exhaustion requirement." *United States v. Cain*, No. 1:16-cr-00103-JAW-1, 2021 U.S. Dist. LEXIS 20672, at *10-11 (D. Me. Feb. 3, 2021).  In the Court's July 22, 2020 order, the Court concluded that "the Government has either waived or forfeited the exhaustion of administrative remedies issue in this case." *Order Denying Def.'s First Mot.* at 5 n.1.  It appears the Government has again waived the exhaustion requirement. *See Gov't's Opp'n* at 11 n.7 ("Given the circumstances of this particular case, the government is not contesting the exhaustion of administrative remedies"). Thus, the Court will proceed to the merits of Mr. Nygren's motion. *See United States v. Whalen*, No. 1:11-cr-00033-JAW, 2020 U.S. Dist. LEXIS 118896, at *7 (D. Me. July 7, 2020) (concluding the Government waived the exhaustion requirement and proceeding to the merits).

at 34. The question now is whether the circumstances have sufficiently changed since the Court's July 22, 2020 order to warrant compassionate release.

After review of Mr. Nygren's new motions for compassionate release, the Court has identified five ways in which the circumstances have changed since the Court's July 22, 2020 denial of his first motion: (1) Mr. Nygren's vaccination, (2) newly alleged medical conditions, (3) new COVID-19 statistics from FMC Devens, (4) FMC Devens' recommendation of home confinement, and (5) greater percentage of sentence served. The Court addresses each of these new circumstances and concludes that while Mr. Nygren's medical conditions heighten his risk of complications from COVID-19, the seriousness of his offense, the relatively short time he has served, and the need for the sentence served to fulfill the sentence imposed continue to preclude his release.

## A.    Steven Nygren's Vaccination

Both the Government and Mr. Nygren confirmed that he received the first dose of the Moderna vaccine on April 12, 2021. *Gov't's Resp. to Vaccine Status Order*; *Def.'s Resp. to Vaccine Status Order*. Although the Court has not received confirmation from either party that Mr. Nygren actually underwent the second vaccine as scheduled, in this circumstance, the Court infers that he received the booster shot as scheduled on May 10, 2021—twenty-eight days from his first shot. *Moderna COVID-19 Vaccine Overview and Safety*, CDC, https://www.cdc.gov/coronavirus/2019-ncov/vaccines/different-vaccines/Moderna.html (last visited May 13, 2021) (*Moderna Vaccine Information*).

If so, according to the CDC, Mr. Nygren will be fully vaccinated on May 24, 2021—two weeks after his second dose. *When You've Been Fully Vaccinated*, CDC, https://www.cdc.gov/coronavirus/2019-ncov/vaccines/fully-vaccinated.html (last visited May 13, 2021).

Mr. Nygren argues that despite his vaccination, he still qualifies for compassionate release. In particular, he notes the nature of the vaccine's emergency FDA approval, uncertainty regarding how long the vaccines provide protection, instances in which fully vaccinated inmates have tested positive, and new COVID-19 variants. *Def.'s Resp. to Vaccine Status Order* at 1-5.

Notwithstanding Mr. Nygren's concerns, COVID-19 vaccines have proven to be extremely effective. In particular, the Moderna vaccine is proven to be "94.1% effective at preventing laboratory-confirmed COVID-19 illness in people who received two doses who had no evidence of being previously infected." *Moderna Vaccine Information*. While the vaccines are not one hundred percent effective, the CDC unequivocally says, "COVID-19 vaccines are effective at preventing COVID-19 disease, especially severe illness and death." *When You've Been Fully Vaccinated*, CDC, https://www.cdc.gov/coronavirus/2019-ncov/vaccines/fully-vaccinated.html (last visited May 13, 2021).

This Court has previously held that an inmate's "risk of serious illness from COVID-19 is . . . reduced significantly by his vaccination." *United States v. Akerson*, No. 1:16-cr-00130-JAW-1, 2021 U.S. Dist. LEXIS 88842, at *25 (D. Me. May 10, 2021). Mr. Nygren recently reiterated that he seeks compassionate release solely "due to the

COVID-19 and risks involved of potential death by remaining incarcerated." *Def.'s Resp. to Vaccine Status Order* at 8. Mr. Nygren will soon be fully vaccinated, and those risks will be greatly reduced. Therefore, Mr. Nygren's risks from COVID-19 are actually much lower than when the Court denied his motion in July 2020.

### B. New Medical Conditions

In its July 22, 2020 order, the Court considered Mr. Nygren's severe obesity, chronic kidney disease, and hypertension, finding that "Mr. Nygren is at greater risk than the average inmate of suffering a severe illness should he contract COVID-19." *Order Denying Def.'s First Mot.* at 28. Furthermore, while the Court did not specifically identify "cerebrovascular disease," it did consider the fact that Mr. Nygren previously suffered from a stroke. *Id.* at 24. The CDC advises that "stroke or cerebrovascular disease" "can make you more likely" to get seriously ill from COVID-19. *People with Certain Medical Conditions*, CDC, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last visited May 13, 2021) (*CDC COVID Med. Conditions*).

Mr. Nygren now asserts for the first time that he suffers from "atrial fibrillation caused by cardiovascular disease." *Def.'s Pro Se Mot.* at 5. As an initial matter, Mr. Nygren provides no evidence of his atrial fibrillation diagnosis. It is Mr. Nygren's burden to prove extraordinary and compelling reasons, and without any updated medical records the Court cannot assess Mr. Nygren's alleged new health condition. Even assuming Mr. Nygren is suffering from atrial fibrillation, it is unclear that he would be at greater risk from COVID-19. The CDC identifies "heart

conditions (such as heart failure, coronary artery disease, cardiomyopathies or hypertension)" as possibly increasing risk of severe illness. *CDC COVID Med. Conditions*. Notably absent is any mention of atrial fibrillation. Thus, the Court is uncertain whether Mr. Nygren actually has atrial fibrillation, and if so, the nature of his particular condition, whether it is treatable, and whether his condition places him at higher risk of severe complications should he contract COVID-19, especially once he is fully vaccinated.

The Court reaffirms its initial determination. The Court continues to believe that Mr. Nygren is at a greater risk than the average inmate and that, based on his physical conditions, he presents a case for compassionate release, though much less compelling than his earlier petition. Given Mr. Nygren's uncontested prior diagnoses of severe obesity and chronic kidney disease, consideration of Mr. Nygren's new medical conditions does not significantly change the Court's analysis, especially in light of his vaccination.

### C.    COVID-19 at FMC Devens

When the Court denied Mr. Nygren's first motion, it found that there were 920 total inmates at FMC Devens, with 838 at the FMC and 82 at the Camp. *Order Denying Def.'s First Mot.* at 30. It further found that seven inmates had tested positive for COVID-19, two inmates had died, and forty-six inmates had recovered. *Id.* at 31. As of today, there are 726 total inmates at FMC Devens, with 671 at the FMC and 55 at the Camp. *FMC Devens*, BOP, https://www.bop.gov/locations/institutions/dev/ (last visited May 13, 2021). FMC

Devens reports one positive inmate and no positive staff.  *COVID-19 Cases*, BOP, https://www.bop.gov/coronavirus/ (last visited May 13, 2021).  Eleven inmates have died, and three hundred seventy-five inmates and sixty-three staff have recovered. *Id.*  While the facility may have experienced a COVID-19 outbreak sometime since the Court's last order, the current statistics show only one positive inmate.  These statistics suggest that FMC Devens is actually safer now than when the Court considered Mr. Nygren's motion in July 2020.

Furthermore, the vaccination numbers from FMC Devens are encouraging. The BOP reports that FMC Devens has fully vaccinated three hundred forty-four staff and four hundred twenty inmates.  *COVID-19 Vaccine Implementation*, BOP, https://www.bop.gov/coronavirus/ (last visited May 13, 2021).  Considering only one inmate at FMC Devens is currently positive, and given the encouraging vaccination numbers and the overall lower inmate population at FMC Devens, the Court concludes that FMC Devens is actually safer now than when the Court denied Mr. Nygren's first motion in July 2020.

**D.      The Institutional Referral for CCC Placement**

In support of his motion for compassionate release, Mr. Nygren submits a document entitled "Institutional Referral for CCC Placement" sent by the Warden at FMC Devens to a BOP community corrections manager on October 23, 2020.  The document states that FMC Devens is "forwarding this referral to the Correctional Programs Division for further review as per the Acting Assistant Director Correctional Programs Division Memorandum issued on April 22, 2020, based on a

population management risk strategy related to the COVID pandemic." *Institutional Referral for CCC Placement* at 2. The referral also states that Mr. Nygren "has maintained clear conduct throughout his current term of incarceration," is "currently classified as a 3 point Minimum Security Level with Out Custody inmate, and has a PATTERN score of Minimum." *Id.* Finally, the referral notes that the "request to relocate his Supervised Release [to Salem, Massachusetts, where he plans to live with his wife and kids] was approved on September 24, 2020, by the United States Probation Office, District of Massachusetts." *Id.* In conclusion, the document states "Unit Team is referring inmate Nygren for COVID-19 Early Home Confinement." *Id.* According to Mr. Nygren's Inmate Profile, his early release was denied on October 28, 2020, but no reasons were given. *Gov't Opp'n*, Attach. 1, *Inmate Profile*.

Mr. Nygren argues that this information should assuage the Court's concerns regarding his recidivism, while the Government notes that his request for home confinement was ultimately denied and his PATTERN score "is not a substitute for this Court's analysis under the applicable law." *Gov't Opp'n* at 15.

The Institutional Referral for CCC Placement does not change the Court's firm convictions regarding Mr. Nygren's danger to the community or consideration of the § 3553(a) factors. First, even though FMC Devens recommended Mr. Nygren for home confinement, the request was ultimately denied by the BOP's Correctional Programs Division. Second, FMC Devens' recommendation is not a substitute for this Court's determination. In denying Mr. Nygren's first motion, the Court "reviewed in detail Mr. Nygren's horrendous record of gaining the trust of others, of obtaining

positions of financial authority within businesses, and of defrauding the people who had entrusted him using often sophisticated schemes of financial deception." *Order Denying Def.'s First Mot.* at 22. The Court found Mr. Nygren's conduct to be "egregious" and his motivations were "purely selfish." *Id.* at 23. The Court concluded that "Mr. Nygren poses a significant risk of economic harm to the community if released." *Id.* at 24. FMC Devens' recommendation of home confinement, which was rejected by the BOP, does not change the Court's conclusion.

At least one court in this District has considered a low PATTERN score in granting an inmate's motion for compassionate release. *See United States v. Maher*, No. 2:04-cr-00093-GZS, 2020 U.S. Dist. LEXIS 168001, at *5 (D. Me. Sept. 15, 2020). Other courts have concluded a defendant still presents a danger to the community, despite a low PATTERN score. *See United States v. Perry*, No. 4:17-cr-40010-TSH, 2021 U.S. Dist. LEXIS 5559, at *5 (D. Mass. Jan. 12, 2021) (considering defendant's PATTERN score "but remain[ing] concerned that he represents a danger to the public"); *United States v. Mackenzie*, 458 F. Supp. 3d 53, 56 (D. Mass. 2020) (considering defendant's "low PATTERN risk score" but finding that "he still poses such a danger, based on his criminal history and the nature of the crime").

After consideration of Mr. Nygren's low PATTERN score, the Court continues to believe Mr. Nygren poses a danger to the community. The Court has no doubt that Mr. Nygren is fully capable of using his intelligence and manipulative ability to fool the PATTERN test just as he fooled the owners of The Brooklin Boat Yard and to fool his other clients. Only nine months have passed since the Court last considered

Mr. Nygren's risk of recidivism. Given the extent of Mr. Nygren's fraudulent schemes and the devastating harm he caused his victims, the Court reaffirms its prior determination that Mr. Nygren poses a danger the community and the § 3553(a) factors continue to weigh against release.

### E. Amount of Time Served

The final difference between Mr. Nygren's present motions for compassionate release and his first motion is that he has served nine more months of his ninety-five-month sentence. The Court denied Mr. Nygren's first motion in part because of "the short amount of time he has served in relation to the total length of his sentence." *Order Denying Def.'s First Mot.* at 1. Mr. Nygren has a projected release date of March 8, 2025. Thus, by the Court's calculation, he has served about 37% of his full term and 43% of his projected statutory term. In the Court's view, this is still too short an amount of time to adequately reflect the seriousness of Mr. Nygren's offense, promote respect for the law, provide just punishment for the offense, afford adequate deterrence, or protect the public. *See* 18 U.S.C. § 3553(a)(2).

### F. Summary

Mr. Nygren has not carried his burden of proving entitlement to compassionate release. Just nine months ago the Court denied Mr. Nygren's motion for compassionate release, and there have been no significant developments to change the Court's determination. Other than the passage of time, to the extent there have been significant changes, those changes make Mr. Nygren's argument for compassionate release more difficult. While his medical conditions can increase the

risk of serious complications from COVID-19, he is now vaccinated and so his risk of serious illness from COVID-19 is substantially reduced. Furthermore, given the nature and circumstances of his offense, releasing Mr. Nygren early would endanger the community and contravene the § 3553(a) factors. On the record before the Court, he does not qualify for compassionate release under 18 U.S.C. § 3582(c).

## V.    CONCLUSION

The Court DISMISSES without prejudice Steven Nygren's Subsequent Emergency Motion for Compassionate Release and Motion for Modification of Sentence Pursuant to 18 U.S.C. § 3582(c)(1)(A) (ECF No. 137) and Emergency Motion for Modification of Sentence/Compassionate Release Pursuant to 18 U.S.C. § 3582(c)(1)(A) in Light of the Imminent Threat of Contracting the COVID-19 Virus and Potential of Death at Higher than Normal Chance Due to Pre-Existing Health Conditions of the Petitioner (ECF No. 145).


SO ORDERED.

/s/ John A. Woodcock, Jr.
JOHN A. WOODCOCK, JR.
UNITED STATES DISTRICT JUDGE

Dated this 13th day of May, 2021